UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 5:18-cr-00291-3 |
| : | |
| JETHRO RICHARDSON : | |

**O P I N I O N**
Motion for Compassionate Release, ECF Nos. 261-262 - Denied

**Joseph F. Leeson, Jr.**                                                                                          April 19, 2021
**United States District Judge**

I.  **INTRODUCTION**

Jethro Richardson, who has served approximately twenty-one months of a seventy-month sentence for fraud-related offenses, filed a Motion for Compassionate Relief and Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the risks presented by the coronavirus pandemic in light of his medical conditions, including HIV[1] and hypertension.  The Government opposes release.  For the reasons set for below and after consideration of the factors set forth in 18 U.S.C. § 3553(a), the Motion is denied.

II.  **BACKGROUND**

On July 10, 2018, an Indictment was filed against Richardson and five other co-defendants charging him with conspiracy to commit fraud and to utter counterfeit securities in violation of 18 U.S.C. §§ 371 and 1343, with three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) for conduct that is alleged to have occurred between June 2016 to May 2018.  A Superseding

---

[1]     Human immunodeficiency virus ("HIV").

Indictment was filed on December 11, 2018, charging Richardson with the same offenses, but increasing the number of co-defendants in the conspiracy to eight and extending the length of the conspiracy to July 2018.  During the conspiracy, Richardson and his co-defendants traveled around the United States and defrauded numerous banks and Walmart stores in at least thirty-five states by cashing or attempting to cash at least 11,000 counterfeit checks, unlawfully using the social security numbers of sixty-four individuals, and causing losses to Walmart of over $1,000,000, of which approximately $600,000 was intended by Richardson.  Richardson pled guilty to all charges and, on July 23, 2019, was sentenced to a total term of imprisonment of seventy (70) months and remanded into custody.  This sentence was in the middle of the Sentencing Guidelines[2] range of 65 to 75 months imprisonment, including the consecutive twenty-four months for aggravated identity theft.  Richardson owes restitution in the amount of $367,793.61.  His projected release date is July 11, 2024, which reflects credit of good time of approximately twelve months.

On January 4, 2021, Richardson, through court-appointed trial counsel, filed a Motion for Compassionate Relief and Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See* Mot., ECF Nos. 261-262.[3]  Richardson asserts that the risks associated with his HIV, high blood pressure, anxiety, and carrier of the sickle cell trait have been exacerbated by his exposure to COVID-19 (a coronavirus) while incarcerated at the Butner Federal Correctional Institution ("FCI").  Richardson contends that there have been over sixty confirmed inmates and more than ten staff members throughout the three facilities that make up FCI-Butner who have tested

---

[2]     Richardson, who was born on August 10, 1978, had prior convictions for larceny in 1997 and possession with intent to deliver a controlled substance in 2013.  He was discharged from supervision for the later offense on April 25, 2017.
[3]     The instant Motion is at ECF No. 262, and the brief in support of the same is at ECF No. 261.  All page citations herein to "Mot." are to the supporting brief.

positive for COVID-19. Richardson contends that his medical condition is so severe that the BOP[4] has classified him in Medical Care Level 3, which includes inmates that are "fragile outpatients who require frequent clinical contacts, and/or who may require some assistance with activities of daily living, but do not require daily nursing supervision." Mot. 9. Richardson further asserts that he has made rehabilitative efforts during his period of incarceration and presents a low risk for recidivism, such that a reduced sentence would meet the goals of sentencing.

The Government opposes the Motion, arguing that Richardson's medical condition is not sufficiently serious according to CDC[5] guidance. *See* Resp., ECF No. 266. The Government asserts that Richardson's medical records show that his HIV has been asymptomatic since 1999 and he has never had an HIV-related illness. *See* Resp. 3-4. Further, aside from his hypertension, which has not been well-controlled for years, his medical conditions are well-managed by the BOP with medication. *See id.* It notes too that Richardson only carries the sickle cell trait, which is not a certain risk factor, and that being HIV positive, alone, is neither a certain risk factor nor a condition that might put a person at risk. *See id.* 12. The Government additionally argues that Richardson, who has served less than a third of his sentence, poses a risk of engaging in further financial crimes if released (economic danger to the community) and that a reduction of sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment as provided for in 18 U.S.C. § 3553(a). *See id.* 16-19.

The Government further states that since the coronavirus pandemic began, the BOP has made extensive changes to its operations to limit the spread of the virus. *See* Resp. 4-6. The

---

4       Bureau of Prisons ("BOP")
5       Center for Disease Control ("CDC")

BOP's "action plan" was prepared over many years and refined in early 2020 in consultation with the CDC and WHO.[6] *See id.*; BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last visited April 13, 2021). The modified operations plan, *inter alia*, limits movement within and access to all BOP facilities; requires quarantine of newly admitted inmates, daily screening of facility staff, and screening of authorized private contractors and visitors; limits access to contractors performing essential services; suspends social visitation, while increasing inmates' telephone allowance; and encourages social distancing, the wearing of face masks, and other steps to limit the spread of the virus. *See id.* As it relates to FCI-Butner Medium I, the Government states that the institution houses 701 inmates (557 at the FCI and 144 at the Camp).[7] *See* Resp. 6. It explains that there was a large outbreak at FCI-Butner "soon after the onset of the pandemic" and nine inmates died in April and May 2020, but the situation was brought under control. *See id.* As of the filing of the Response, there were two inmates who were reported positive and were isolated while they were treated. *See id.* As of the preparation of this Opinion, there are no positive inmates. *See* https://www.bop.gov/coronavirus/ (last visited April 14, 2021).

### III.    LEGAL STANDARD

The First Step Act empowers criminal defendants to request compassionate release with the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).[8]

---

[6]    World Health Organization ("WHO")

[7]    As of the preparation of this Opinion, the population is 703 (547 at the FCI and 156 at the Camp). *See* https://www.bop.gov/about/statistics/population_statistics.jsp (last visited April 14, 2021).

[8]    Section 3582(c) is actually part of the Sentencing Reform Act of 1984 ("SRA"), but was amended by the First Step Act to provide prisoners a more direct route to court for their claims. *See United States v. Torres*, No. 18-414, 2020 WL 3498156, at *6 (E.D. Pa. June 29, 2020).

This section dictates that the defendant must first move for compassionate release with the BOP, which then has thirty days to consider the request.  *See United States v. Raia*, 954 F.3d 594, 595-97 (3d Cir. 2020) (holding that the risks COVID-19 poses in the federal prison system do not excuse the exhaustion requirement).

Once a defendant satisfies the exhaustion requirement, the court may reduce a term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *See* 18 U.S.C. § 3582(c)(1)(A). *See also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").  Section 1B1.13 of the United States Sentencing Guidelines provides that the court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A), "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction; . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [] the reduction is consistent with this policy statement."  18 U.S.C. Appx. § 1B1.13. *See also United States v. Williams*, No. 15-471-3, 2020 U.S. Dist. LEXIS 147664, at *10 (E.D. Pa. Aug. 17, 2020) ("In order to find compelling and extraordinary reasons, the policy statement additionally requires a court to find that a defendant is 'not a danger to the safety of any other

person or to the community, as provided in 18 U.S.C. § 3142(g)'" (quoting 18 U.S.C. Appx. § 1B1.13(2))).

The Sentencing Commission has identified the medical condition of a defendant as an extraordinary and compelling reason if:

> (i) The defendant is suffering from a terminal illness . . . .
> (ii) The defendant is—
>     (I)   suffering from a serious physical or medical condition,
>     (II)  suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

18 U.S.C. Appx. § 1B1.13, App. Note 1. However, "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Santiago*, No. 15-280, 2020 U.S. Dist. LEXIS 124869, at *7 (E.D. Pa. July 15, 2020). Similarly, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."[9] *Raia*, 954 F.3d at 597. Even if a defendant's medical condition is sufficiently severe, the court must still consider the 18 U.S.C. § 3553(a) sentencing factors and whether the defendant is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g). *See United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (holding that "the existence of some health risk to every federal prisoner as the result

---

[9] *See* BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited April 13, 2021); *United States v. McLaughlin*, No. 17-121-2, 2021 U.S. Dist. LEXIS 29146, at *4-9 (E.D. Pa. Feb. 16, 2021) (summarizing the BOP's response to the coronavirus pandemic); Resp. 9-13.

of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit"). The § 3553(a) sentencing factors include, but are not limited to:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142(g) provides:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>   (2) the weight of the evidence against the person;
>   (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

## IV. ANALYSIS

Initially, the Court finds that Richardson has satisfied the exhaustion requirement by first seeking compassionate release with the BOP. *See* Mot. 3.

### A. Richardson's medical conditions do not present an extraordinary and compelling reason to reduce his sentence.

The BOP medical records confirm that Richardson's HIV is "asymptomatic" and that he has "never had an HIV-related illness." *See, e.g.* Records 22 and 426, ECF No. 267 (records dated September 18, 2019, and December 28, 2020). Richardson's HIV has consistently been well-managed with medication and, as of January 6, 2020, his viral load was "undetectable." *See, e.g. id.* 3, 345. It appears from the records that Richardson's anxiety disorder is also being well-managed with medication. *See id.* 265, 285, 316-319. Richardson is on medication for his hypertension and receives regular blood pressure checks. *See id.* 29, 40, 72, 290. Hypertension is listed in the medical records as Richardson's primary medical issue. *See id.* 29. His medical level is listed as "Medically Necessary - Non Emergent." *See, e.g.* 426. The medical records indicate that in the fall of 2019, Richardson reported that his hypertension had not been controlled since prior to his incarceration. *See id.* 29. The following year, in September 2020, it was reported that although Richardson has had elevated blood pressures periodically, his blood pressure checks "for the most part they have been good." *See id.* 290. Richardson has had no physical limitations or restrictions during his incarceration. *See id.* 94-95, 387-392. Aside from one notation that Richardson is a carrier of the sickle cell trait, he has no medical conditions related thereto. *See id.* 76, 288.

The Court addresses each of the medical conditions to determine if he has presented an extraordinary and compelling reason for release. First, "[s]imply inheriting the sickle cell trait does not place an individual at an increased risk of severe illness from COVID-19." *United*

*States v. Fields*, No. 06-155-3, 2020 U.S. Dist. LEXIS 241467, at *5-6 (E.D. Pa. Dec. 23, 2020) (rejecting the inmate's suggestion that his alleged medical conditions demonstrated extraordinary and compelling reasons justifying compassionate release). Second, an anxiety disorder is neither an actual nor potential COVID-19 risk factor. *See United States v. Moldover*, No. 14-637, 2020 U.S. Dist. LEXIS 212264, at *11 (E.D. Pa. Nov. 13, 2020); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed April 18, 2021). Further, it appears that Richardson's anxiety is being well-managed with medication. *See United States v. Hight*, 488 F. Supp. 3d 184 (E.D. Pa. 2020) (denying compassionate release where the inmate's anxiety was being well-managed with medication). Third, Richardson's HIV is also being well-controlled by the BOP. *See United States v. Pangelinan*, No. 17-483, 2020 U.S. Dist. LEXIS 121710, at *4-5 (E.D. Pa. July 9, 2020) (denying the motion for compassionate release where there was no evidence that the prisoner's medical conditions were not being appropriately managed by the prison). According to the CDC, it is unknown whether people with HIV are at greater risk of acquiring COVID-19, and "no significant differences in clinical outcomes were found between people with HIV who developed COVID-19 and individuals without HIV." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed April 18, 2021). *See also United States v. Coleman*, No. 12-295-1, 2020 U.S. Dist. LEXIS 189069, at *12-13 (E.D. Pa. Oct. 9, 2020) (denying compassionate release where the inmate's medical records show that his HIV was asymptomatic and that he was receiving treatment). Fourth, the CDC has stated that people with hypertension "might" be at an increased risk; however, "[h]ypertension, even in combination with other conditions, is not generally classified as a factor warranting compassionate release." *See Coleman*, 2020 U.S. Dist.

LEXIS 189069, at *12-14.  Although Richardson's hypertension is not under complete control, it is being well-treated by the BOP.  *See United States v. Epstein*, No. 14-287-1 (FLW), 2020 U.S. Dist. LEXIS 87653, at *12-13 (D.N.J. May 18, 2020) (concluding that although certain days are worse than others, "what is clear to the Court, particularly from the list of medications provided in the records, is that the BOP has given adequate care to control and manage Defendant's hypertension, which includes providing the necessary drugs and monitoring").  None of Richardson's medical conditions, alone or in combination, have diminished his activities of daily living or ability to provide self-care.  *See United States v. Ramsey*, No. 2:14-cr-00296, 2021 U.S. Dist. LEXIS 26959, at *12 (E.D. Pa. Feb. 12, 2021) (observing that the inmate's "conditions have been adequately managed during his incarceration, he is able to partake in normal activities of daily life, and most importantly, he is able to provide self-care [and t]hese observations weigh against a finding that [the inmate's] medical conditions present extraordinary and compelling reasons for a reduction of his sentence").

Moreover, the BOP has taken significant steps to minimize the risk of COVID-19 transmission into and inside its facilities.  Aside from an outbreak at FCI- Butner in the first few months of the coronavirus pandemic, the BOP has been successful in its efforts at FCI-Butner and its facilities as a whole.  *See United States v. Lillo*, No. 15-43, 2020 U.S. Dist. LEXIS 251346, at *9 (D.N.J. Nov. 17, 2020) (determining that there were no extraordinary and compelling reasons for compassionate release even though "there has been an outbreak in the past, and the risk of infection at FCI Coleman Low is real, [but] the risk seems to be controlled, and is not particularly high or extraordinary when considered in the context of this pandemic").  Although all loss of life from COVID-19 is horrible, the loss of life in BOP facilities (approximately 0.0018%) is comparable to the loss of life in the United States population as a

whole (0.0017%).[10]  *See* https://www.bop.gov/coronavirus/ (last accessed April 15, 2021); https://covid.cdc.gov/covid-data-tracker/#datatracker-home; https://www.census.gov/popclock/ (last accessed April 15, 2021).

For all these reasons, Richardson has not presented an extraordinary and compelling reason to warrant a reduction in sentence.[11]

### B. A reduction in sentence is not warranted because Richardson presents an economic danger to the community if released.

As previously mentioned, the instant offenses occurred over more than two years, involved frauds in thirty-five states, at least 11,000 counterfeit checks, the unlawful use of the social security numbers of sixty-four individuals, and resulted in losses over $1,000,000, for which Richardson must pay restitution in the amount of $367,793.61.  *See United States v. Hill*, No. 18-271, 2020 U.S. Dist. LEXIS 136070, at *18-19 (E.D. Pa. July 31, 2020) (denying compassionate release because the inmate's fraud scheme, although non-violent, was repeated "numerous times over several years and across multiple states" such that he continued to present a fraud danger to the community and to others if released).  Richardson has prior convictions and was on parole at the time he committed his instant offenses.  *See United States v. Irizzary*, No.

---

[10]   The Court recognizes that numbers change daily, but finds that the percentages present an accurate picture on average.

[11]   If an inmate fails to show that his medical conditions are sufficiently severe to present an extraordinary and compelling reason for compassionate release, "it is not necessary for the Court to advance to the next step of the § 3582(c)(1)(A)(i) inquiry by assessing the application of the § 3553(a) factors and possible danger to the community imposed." *Coleman*, 2020 U.S. Dist. LEXIS 189069, at *14-15 (denying the inmate's motion for compassionate release, without considering danger and the § 3553 factors, because the inmate's medical conditions of cancer, a bad heart, HIV, asthma, and hypertension did not present extraordinary and compelling reasons for compassionate release); *Hight*, 488 F. Supp. 3d 184 (finding no need to consider the sentencing factors because the inmate failed to present extraordinary and compelling reasons justifying his immediate release).  Nevertheless, this Court briefly addresses whether Richardson is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g) and the sentencing factors in 18 U.S.C. § 3553(a)).

14-652-13, 2021 U.S. Dist. LEXIS 35179, at *25 (E.D. Pa. Feb. 25, 2021) (concluding that the defendant, who on parole at the time he committed his offense, presented a danger to others and the community if released early). Supervision on release, alone, would therefore be insufficient to protect the community from the economic danger he presents. *See Hill*, 2020 U.S. Dist. LEXIS 136070, at *18 (holding that supervision by the United States Probation Office will not ensure the safety of the public and community because there is no way to prevent the defendant from renewing his fraud schemes).[12] For all these reasons, Richardson is likely to reoffend if released and poses an economic danger if released, such that a reduction in sentence is not consistent with applicable policy statements issued by the Sentencing Commission. *See United States v. Maldonado*, No. 17-138, 2021 U.S. Dist. LEXIS 8112, at *10 (E.D. Pa. Jan. 15, 2021) (finding that the inmate's willingness to re-offend weighs against compassionate release); *Williams*, 2020 U.S. Dist. LEXIS 147664, at *10 ("In order to find compelling and extraordinary reasons, the policy statement additionally requires a court to find that a defendant is 'not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" (quoting 18 U.S.C. Appx. § 1B1.13(2))).

### C. The factors set forth in 18 U.S.C. § 3553(a) do not support a reduction in Richardson's sentence.

For the reasons set forth in the previous section, releasing Richardson would not afford adequate deterrence to criminal conduct or protect the public from further crimes of Richardson.

---

[12] *See United States v. Hill*, No. 18-271-1, 2020 U.S. Dist. LEXIS 146335 (E.D. Pa. Aug. 13, 2020) (refusing to reconsider the denial of compassionate release, which concluded that the inmate's risk of future fraud rendered him a danger to the community, because unlike *Himler*, which was decided under 18 U.S.C. § 3142(f)(1), U.S.S.G. § 1B1.13 directs the court to consider danger under § 3142(g) (citing *United States v. Himler*, 797 F.2d 156, 157-58 (3d Cir. 1986) (holding that a defendant's danger of recidivism in crimes involving the use of fraudulent identification are not the type of danger to the community which will support an order of detention under § 3142(f)(1) of the Bail Reform Act of 1984))).

*See* 18 U.S.C. §§ 3553(a)(2)(B)-(C). Also, the nature and circumstances of the offense, which occurred over a two-year period across thirty-five states causing losses over $1 million, and the history and characteristics of Richardson, including the fact that he was on parole at the time of the offense, also weigh against his release. *See United States v. Sealey*, No. 17-00347-1, 2021 U.S. Dist. LEXIS 43582, at *5-7 (E.D. Pa. Mar. 9, 2021) (finding that the nature and circumstances of the offense and the history and characteristics of the defendant, *see* 18 U.S.C. § 3553(a)(1), weighed against release where the inmate "stole more than $1.4 million from people whose trust he obtained through false pretenses"). Given that the sentence was within the middle of the Sentencing Guidelines range, reducing Richardson's sentence would also not account for the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a)(6). Richardson's suggestion that "a sentence of 18 months is not far outside the range contemplated by federal law," *see* Mot. 11, is incorrect. In fact, federal law requires a twenty-four-month consecutive sentence on the charge of aggravated identity theft alone. The Court also finds that a reduction is inconsistent with the "need to provide restitution to any victims of the offense" given that Richardson owes almost $368,000 in restitution. *See* 18 U.S.C. § 3553(a)(7).

Moreover, releasing Richardson after having served only twenty-one months of his sentence "would fail to promote respect for the law, provide just punishment for his actions or reflect the seriousness of his crimes." *See* 18 U.S.C. § 3553(a)(2); *Sealey*, 2021 U.S. Dist. LEXIS 43582, at *5-7 (concluding that the inmate's fraud "was extensive and caused significant harm" and his record "demonstrates a disregard for the law and a proclivity for dishonesty and fraud," such that releasing him after having served less than half of his sentence "would fail to promote respect for the law, provide just punishment for his actions or reflect the seriousness

of his crimes"). Contrary to Richardson's assertion that he has served a "substantial portion"[13] of his sentence, *see* Mot. 11, he has only served approximately one-third of his sentence. Specifically, Richardson has served twenty-one months toward his seventy-month sentence, which is only 30%. With full good-time credit and a projected release date of July 11, 2024, Richardson will have to serve approximately sixty months. To date, Richardson has served 35% of this sentence. Under either calculation, Richardson has served less than half of his sentence and granting release at this time "would fail to promote respect for the law, provide just punishment for his actions or reflect the seriousness of his crimes." *See* 18 U.S.C. § 3553(a)(2); *Maldonado*, 2021 U.S. Dist. LEXIS 8112, at *10 (determining that where the inmate had served less than half of his sentence, release would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment pursuant to 18 U.S.C. § 3553(a)(2)(A)); *United States v. Shulick*, No. 16-428, 2020 U.S. Dist. LEXIS 104754, at *12-13 (E.D. Pa. June 16, 2020) (determining that the 3553(a) factors weighed against compassionate release of an inmate who served nineteen months of a sixty-month sentence for embezzlement and fraud offenses).

## V. CONCLUSION

Richardson's medical conditions are not sufficiently serious to provide an extraordinary and compelling reason for his release. This alone dictates that the Motion for Compassionate Relief and Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) be denied. Nevertheless, the Court has also considered whether Richardson presents a danger to the community if released and whether a reduction is consistent with the factors in 18 U.S.C. § 3553(a). In light of the serious nature of the offense, which occurred over a period of two years

---

[13] "Substantial" is defined as "being significant or large and having substance." Black's Law Dictionary Free Online Legal Dictionary 2nd Ed.

and caused losses exceeding $1 million, as well as Richardson's prior offenses and the fact that he was on parole at the time of the offense, he presents an economic danger to the community if released. For all these reasons and those more fully discussed herein, releasing Richardson after having completed only one-third of his sentence is not consistent with 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission. The Motion for Compassionate Relief and Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is therefore denied.

      A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge